**REMICK PRODUCTS, Inc., v. MILLS, Federal Prohibition Administrator, et al.**

Circuit Court of Appeals, Second Circuit.
November 14, 1927.

No. 37.

1. **Intoxicating liquors** ⊙☞108(5)—**Finding of bad faith in withholding books from inspection by government agent held sustained by evidence, and revocation of alcohol withdrawal permit warranted (National Prohibition Act, tit. 2, § 9 [27 USCA § 21]).**

Evidence *held* to warrant finding of bad faith of holder of specially denatured alcohol withdrawal permit in failing to offer its books for inspection by government agent, so as to warrant revocation of its permit to use such alcohol for manufacturing purposes, under National Prohibition Act, tit. 2, § 9 (27 USCA § 21), in view of sections 5, 13 (27 USCA §§ 14, 25).

2. **Intoxicating liquors** ⊙☞108(5)—**Finding of attempt to bribe official to act favorably on application for increased alcohol withdrawals held justified by evidence, and revocation of permit warranted (National Prohibition Act, tit. 2, § 9 [27 USCA § 21]).**

Evidence *held* to warrant finding that president and principal stockholder of corporate holder of permit to use specially denatured alcohol for manufacturing purposes attempted to bribe government official, with intent to influence his recommendation and action on impending application for increased withdrawals of alcohol, so as to warrant revocation of permit to use such alcohol for manufacturing purposes, under National Prohibition Act, tit. 2, § 9 (27 USCA § 21), in view of sections 5, 13 (27 USCA §§ 14, 25).

3. **Intoxicating liquors** ⊙☞106(4)—**Permittee's failure to have books available for inspection held violation of regulations, justifying revocation of withdrawal permit (National Prohibition Act, tit. 2, § 9 [27 USCA § 21]; tit. 3, §§ 13, 15 [27 USCA §§ 83, 85]).**

Failure of holder of permit to use specially denatured alcohol for manufacturing purposes to have its books available for inspection by

government agent, and insufficient excuses given therefor, *held* to constitute violation of Regulation 61, promulgated by Commissioner of Internal Revenue under National Prohibition Act, tit. 3, § 13 (27 USCA § 83), and also violation of section 15 of such act (27 USCA § 85), making violations of title 3, or regulations thereunder, a misdemeanor, and revocation of withdrawal permit was authorized under title 2, § 9 (27 USCA § 21), and Regulation 60, art. 19, § 1903, in view of Regulation 30.

4. **Intoxicating liquors** ⊙☞106(2)—**Attempt to influence action of government agent is sufficient to show permittee's bad faith without showing actual bribe.**

Attempt of holder of specially denatured alcohol permit to influence government agent in his official capacity in passing on pending application for increased withdrawals is sufficient to make out a case of lack of the good faith in conforming to National Prohibition Act (27 USCA), required of a permittee, without showing that he was actually caught in passing a bribe.

5. **Intoxicating liquors** ⊙☞108(5)—**Right to revoke alcohol withdrawal permit depends on testimony before Commissioner (National Prohibition Act, tit. 2, § 9 [27 USCA § 21]).**

Under National Prohibition Act, tit. 2, § 9 (27 USCA § 21), right to revoke permit to use specially denatured alcohol for manufacturing purposes is dependent on testimony before the Commissioner or his agent, and such statute merely grants right of review of proceedings before the Commissioner, and does not authorize taking of new testimony at hearing before the District Judge.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Remick Products, Inc., against Chester P. Mills, Federal Prohibition Administrator for the Second District of New York, and as successor of John A. Foster, former Federal Prohibition Administrator for the State of New York, and another, to review the action of the defendants in revoking plaintiff's permit granted under the National Prohibition Act for use of denatured alcohol. Decree for defendants, and plaintiff appeals. Affirmed.

Lewis Landes, of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (U. S. Grant, Asst. U. S. Atty., of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This suit seeks a review, under sections 9 and 5, title 2, of the National Prohibition Act (27 USCA §§ 21, 14), of the action of the appellees in revoking appellant's permit to use specially denatured alcohol in the manufacture of toilet

and alcoholic preparations. It also sought injunctive relief, based on the claim of irreparable damages, due to unlawful acts on the part of the appellees in violation of the provisions of the National Prohibition Act (27 USCA). Act Oct. 28, 1919, c. 85, title 2, section 9 (41 Stat. 311 [27 USCA § 21]). Jurisdiction is dependent wholly upon provisions of section 9, which provides that, if the Commissioner has reason to believe that any person who has a permit is not in good faith conforming to the provisions of the act, he or his agent may cite such person to appear before him on a specific date and examine the facts, after making known the charges, which hearing shall take place within the judicial district and within 50 miles of which the offense is committed. If it is found that the person has been guilty of willfully violating any such laws as charged, or has not in good faith conformed to the provisions of the act, the permit may be revoked, and, "Should the permit be revoked by the Commissioner, the permittee may have a review of his decision before a court of equity in the manner provided in section 5 hereof."

Section 5 (41 Stat. 309 [27 USCA § 14]) provides for a notice to the manufacturer, and authorizes revocation of the permit to the manufacturer if he fails to show, to the satisfaction of the Commissioner, that the articles manufactured correspond to the description and limitation provided in section 13 of this chapter. The manufacturer is accorded, by this section, appropriate proceedings for a review of the action of the Commissioner in any court of equity. Section 13 (41 Stat. 312 [27 USCA § 25]) makes provision for shipment of liquors, records of the carriers, delivery, and verification of copies of permits.

The prohibition agent, who conducted the proceedings under section 9, revoked the permit—(a) because on the 1st, 2d, 3d, 14th, and 15th days of April, 1926, the records of the appellant, showing the receipt, use, and disposition of specially denatured alcohol, were not exhibited for inspection to government agents during reasonable hours of those days; (b) that the president and principal stockholder of the appellant made a false affidavit, for the purpose of defrauding the United States, relating to his specially denatured alcohol business, in that he swore that he had never been employed by any person holding a permit under the National Prohibition Act, whereas in fact he had been previously employed as a chemist by another corporation, the holder of such a permit, and that the object of this false representation was to se-

cure increased withdrawals of specially denatured alcohol; (c) that on August 4, 1926, the same president of the appellant promised and offered an interest in his business to the extent of a monthly payment of $500 to an agent acting under the authority of the Treasury Department, in his official capacity, as chief of the withdrawal division in the office of the prohibition administrator at New York City, with the intent to influence the recommendation and action of such person on an application then pending before him for increased withdrawals of specially denatured alcohol. His action was approved by the prohibition administrator. Thereafter this suit was instituted. The court below, upon the record made before the agent, and upon testimony taken in open court, dismissed the bill upon the charges specified above as (a) and (c).

[1] As to the first charge, that on April 1, 2, 3, 14, and 15, the records of the receipt, use, and disposition of specially denatured alcohol were not subject to inspection by government agents, it appears that the government agents called at the place of business of the appellant during business hours and asked to exhibit its books and papers for inspection. They were put off on the several days with various excuses, but principally because of the illness of the president of the corporation. The claim of the government is that these refusals and excuses amounted to bad faith, which is a ground for revoking a permit. It was plainly established at the proceedings before the agent, as it was below, that when an agent called on April 1, to make an official inspection, a young woman in charge informed him that she was the bookkeeper and the owner was out, and that she did not know where he could be located. She claimed to have no access to the records of the permittee. The agent saw some books on the desk, and asked if they were part of the records, to which she replied that some of them were, but she did not have permission to show them in the absence of the president. The agent left, stating he would be back the next morning at a fixed hour, and told the purpose of his visit. When the agent called, he was again refused access to the records by the same young woman. She stated she expected a telephone call from the president. The agents inspected the alcohol storage room and found none on hand. Later the president called on the telephone and informed the agents that he was downtown engaged in a business matter, and could not come to his place of business as requested by them, but promised to go to the office of the prohibition

administrator the next day. The president did call at the office, as promised, and there told the same agent that all his books, records, and papers were in the hands of his attorney. He was then requested to obtain his records and keep them at his place of business for the government's inspection. On the 14th the agents again visited the premises of the permittee and found the same bookkeeper, who, after making several telephone calls, informed the agent that the president was ill and unable to come to his office. An arrangement was then made by which the agents were to be telephoned to the next day, when the books would be available. But on the next day—April 15—they were informed by telephone that the president was still ill, and the bookkeeper stated that she could not determine when the books would be available for inspection. The president, in his testimony, admitted that the books were not available for inspection at the times mentioned by the agents, but stated the books were in the safe on the premises of the permittee during the agents' various visits, and that it was only papers having to do with appellant's application for authority to make larger withdrawals of specially denatured alcohol which were in the possession of his attorney. He pleaded his excuse of illness and supported it by a doctor's certificate. However, he said he was confined to his home only for short periods of time— one day at a time. The finding of the agent, supported by the District Judge, that there was bad faith exhibited by the appellant in failing to offer these books for inspection by the government agent, is supported by the evidence, and we will not reverse that conclusion.

[2] We think, also, that the president and principal stockholder of the appellant made an offer of $500 per month to a person then acting under authority of the Treasury Department in an official capacity as chief of the withdrawal division in the office at New York City, and did so with the intent to influence the recommendation and action of such person on an application then pending before him for increased withdrawals of specially denatured alcohol. It was testified to at the hearing before the agent, as well as before the District Judge, that on the evening of August 4, 1925, after office hours, while the president of the appellant was riding in a motor car to Brooklyn, he offered this government official an interest in the business of the appellant to the extent of $500 monthly if he "would stretch a point one way or another" in favor of the appellant. At the time this offer was made, there was pending for final disposition in the department an application of the appellant for authority to make increased withdrawals of alcohol. The application had been previously denied, but, upon review in the District Court, it had been referred back to the administrator for further consideration and determination, and the determination of the administrator, with the complete administrative record, was to be filed again with the court for final determination. The president had previously discussed with this same official the possibility of his joining appellant's organization. He referred to one of the agents who had asked for an inspection of the books on the days referred to as a "rat," and requested that he and the other agents investigating him be taken off, or "lay off" him as far as the investigation they were conducting was concerned. The president, as a witness, admitted making an offer of $500 a month, but he denied that he asked him to stretch a point, and also that he had called the agent a "rat," and asserted that he did not want the official to do anything illegal.

[3] Persons holding permits to use specially denatured alcohol in excess of 100 wine gallons per quarter must keep a permanent record showing data as to the amount of each formula of denatured alcohol received, the amount of denatured alcohol for each formula on hand at all times, the name of products in which each formula of denatured alcohol is used, and the number of gallons, or amount otherwise expressed, of each product manufactured, together with the names and addresses of the persons to whom such products are sold. Such records must be kept complete and up to date, and open for inspection by government officers. While no particular form is required, the data thus enumerated must be ascertainable from the records and invoices kept by the manufacturer. Article 112 of Regulation No. 61. Section 13 of title 3 of the National Prohibition Act (41 Stat. 321 [27 USCA § 83]) gave the Commissioner authority to issue, from time to time, regulations with respect to the use of industrial alcohol, and it was in pursuance of this statute that Regulation 61 was promulgated, and later Regulation 30. Regulation 30 provides that the applicant shall also file a bond with the application. The system of distribution and use of specially denatured alcohol is practically the same under Regu-

lation 61 as under Regulation 30. The effective regulation at the time of the appellant's offenses was Regulation 61, in so far as specially denatured alcohol was concerned. The failure of the appellant on several days to have its books available for inspection and the insufficient excuses given therefor, justify the charge of a violation of this regulation. Indeed, it was a violation of section 15, title 3, of the act (27 USCA § 85), providing that it is a misdemeanor to violate any provision of title 3 or the regulations lawfully made thereunder. Article 119 of Regulation 61 provides that all proceedings with respect to the revocation of permits provided for in Regulation 60 shall be applicable to Regulation 61. Section 1903 of article XIX, Regulation 60, provides that upon a showing, as prescribed by section 9 of title 2 of the National Prohibition Act, there is a probable cause or reason to believe that any person who holds a permit is not in good faith conforming to the provisions of the act, or is violating the laws of any state relating to intoxicating liquors, a citation shall be forthwith issued, citing such permittee to appear and show cause why his permit should not be revoked. This gave ample authority for the proceeding and the action taken. In Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, the Supreme Court, in speaking of the right of review of an adverse decision by the Commissioner, said:

"That Congress * * * did not undertake to vest in the court the administrative function of determining whether or not the permit should be granted; but that this provision is to be construed, in the light of the well-established rule in analogous cases, as merely giving the court authority to determine whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence or clearly arbitrary or capricious."

[4] The finding of the agent and the approval by the court that the permittee, acting through its president, was attempting to influence the action of a government official by offers of money, likewise makes out a case of lack of good faith in conforming to the provisions of the National Prohibition Act which are required of a permittee. It was unnecessary to wait until he was actually caught in passing a bribe. It was sufficient that he attempted to influence the action of the government agent in his official capacity. Vollmer Beverage Co. v. Blair et al. (D. C.) 2 F.(2d) 469.

[5] There was sufficient testimony to establish these charges without considering the testimony taken by the District Judge, and therefore it becomes unnecessary to consider the relevancy of such testimony. Much of the testimony taken by the District Judge was a repetition of that taken before the agent. We do not consider the evidence adduced at the hearing before the District Judge, for we think the right to revoke the permit was dependent upon the testimony before the Commissioner or his agent. Section 9 merely grants a right of review of proceedings before the Commissioner; it does not contemplate taking new testimony.

Decree affirmed.