LISCIO v. CAMPBELL, Federal Prohibition Administrator, et al.

Circuit Court of Appeals, Second Circuit.
July 1, 1929.

No. 352.

Charles Dickerman Williams, of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (U. S. Grant, Asst. U. S. Atty., of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). On what theory the plaintiff applied for a decree compelling the administrator to grant him a license pendente lite we cannot understand. Section 6 (27 USCA § 16) is the measure of his rights, and, while it provides for a suit in equity, it does so only by reference to section 5 (27 USCA § 14), which says that "during the pendency of such proceedings" the court "may restrain the manufacture, sale, or other disposition of such article." Nowhere is it suggested that the court shall issue an ad interim permit; on the contrary, the section presupposes that the permit has been already revoked, and the language quoted precludes the notion that the permittee may reverse the revocation before final decree. Furthermore, section 9 (27 USCA § 21), which gives a general right to review revocations, expressly declares that pendente lite the permit shall remain revoked. It would require strong language in any event to justify the power to grant what is in sub-

stance a preliminary mandamus, the starkest of solecisms; but these clear indications to the contrary would be enough, were it a usual procedure, and we need not consider the general jurisdiction of a court of equity to grant affirmative relief in limine.

As the final hearing upon the bill must in any case be limited to the proceedings before the administrator (Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046), we are now in as good a position to decide the issues as we should ever be, and we proceed to the merits. The circular letter of the Prohibition Commissioner of December 1, 1928, in effect prohibited the use of whisky for manufacturing whenever it was not necessary as an extractive, solvent, or preservative. The reason given was the difficulties which had arisen from its misuse, presumably because the limitations prescribed for the direct dispensing of whisky did not apply. While it is only when a condiment that the commissioner forbids it, this is how the plaintiff wished to use it, for he made no pretense of showing that he was within the compass of the circular. His complaint really is that whisky aids his sales, which we can well understand, and that people think his drugs help them more if they get a little liquor with them, which is also credible.

Section 1101 of Regulation II allows the use of "alcohol and other distilled spirits and wines" in making drugs, and while section 1103 limits the use of alcohol to so much as may be necessary as a solvent, an extractive, or a preservative, it does not apply to whisky (subdivision (e), § 10, Regulation II), and, if it did, would not forbid its use altogether. Therefore, so far as the decision depends upon the circular letter of December 1, 1928, it has no support either in the statute or in the regulations, because, when Congress gave power to the commissioner and the Secretary concurrently to make regulations, neither one could exercise it alone. In the absence of any regulation, it would appear that the commissioner must in each case decide whether the whisky demanded would in fact be used unlawfully; that is, as a beverage. The circular letter dispenses with that issue, and forbids its use, though he might be satisfied in the case before him that all of it would in fact go into the drugs, however unnecessary it might be therapeutically.

It is quite true that Congress might go as far as that if the necessities of effective execution required, even though it resulted in extending the power beyond its literal terms. Purity Extract Co. v. Lynch, 226 U. S. 192, 33 S. Ct. 44, 57 L. Ed. 184; Ruppert v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 64 L. Ed. 260; Lambert v. Yellowley, 272 U. S. 581, 47 S. Ct. 210, 71 L. Ed. 422, 49 A. L. R. 575; Selzman v. U. S., 268 U. S. 466, 45 S. Ct. 574, 69 L. Ed. 1054. We may assume, also, that a regulation might do the same, because it is in the nature of legislation, though delegated. But we are not clear that a rule of the commissioner alone has any such force, not having any sanction of Congress. Therefore, if the case had no more in it than that the whisky was not chemically or therapeutically necessary to the plaintiff's compounds, we are not prepared to say that his supply could be cut off, provided the commissioner really believed him to be fit to be intrusted with it; that is, that he would use all of it in the composition of drugs which were not, and could not, be beverages. We leave that question open in case it shall arise.

There was, however, enough evidence to justify the commissioner's conclusion that the plaintiff was not to be trusted with whisky. On October 23, 1926, he made a supplemental application for its use in the drugs here in question, which was granted on condition that they should be compounded in the presence of a deputy of the local administrator. Confessedly he did not comply with this during the year 1927 or 1928. It is true that he asserts that the same condition was not imposed in 1928; but, while it seems to us that in this he is mistaken, one lapse was enough and the question is immaterial. So, too, is it whether the condition was lawful or not. The issue of the plaintiff's good faith cannot depend upon that. If he accepted without protest a conditional permit, it does not exonerate him that, as it turns out, he might have got one without condition. The commissioner had just ground to assume that he did not wish to allow any inspection because he had something to conceal, not because he meant in this way to assert his right as he understood it. Moreover, his testimony as to what notice he had of the condition was extremely unsatisfactory, and fortified the conclusion. At most we can do no more than find out whether there was any tenable basis of fact for the finding; there certainly was, and we put our decision upon that ground.

Decree affirmed; bill dismissed.