LION LABORATORIES, Inc., et al. v. CAMP-BELL, Federal Prohibition Administrator, et al.

Circuit Court of Appeals, Second Circuit. July 8, 1929.

No. 349.

Charles Dickerman Williams, of New York City, for plaintiffs.

Charles H. Tuttle, U. S. Atty., of New York City (U. S. Grant, Asst. U. S. Atty., of New York City, of counsel), for defendants.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). This cause has been presented by both sides as a test of the merits of the bill. We therefore pass the question whether it was proper to grant an injunction pendente lite at all. If the bill rested upon section 9 of title 2, National Prohibition Act (27 USCA § 21), certainly it was not; if it depended upon the general equity powers of the court, we do not decide whether the policy manifested in section 9 applies, when there has been no hearing before the commissioner, and when, as here, the revocation was by regulation (section 218, Regulation 2, Oct. 1, 1927). With this reservation we pass at once to the merits.

In Higgins v. Foster, 12 F.(2d) 646, we held that the action of the commissioner was unlawful in revoking without hearing a permit to manufacture denatured alcohol. The permit was to continue until surrendered or canceled, and the commissioner argued that he had been without power to issue it in that form and that it had expired on December 31st of the succeeding year. His revocation had therefore done nothing more than declare what the law would effect without it. This he urged because the second paragraph of section 6 provided that permits to manufacture "liquor" must be issued for one year and must expire on the 31st day of December. We held that a permit to manufacture denatured alcohol was not a permit to manufacture "liquor," since "liquor" was so defined in section 1 of title 2 (27 USCA § 4) as to exclude it. Hence we held that such permits need not be measured by months or days, and that the commissioner had originally acted within his powers. On the reargument we adhered to this position, and further said obiter that the first two paragraphs of section 6 referred only to "liquor."

The present case is an effort to reargue the point decided in Higgins v. Foster, because the Circuit Court of Appeals for the Seventh Circuit has differed with us as to the interpretation of "liquor." Chicago

644

Grain Products Co. v. Mellon, 14 F. (2d) 362. The defendants do not, however, press that point again, but rely upon certain language in the second paragraph of section 6 (27 USCA § 16), not then called to our attention, which reads as follows: "Every permit shall be in writing, dated when issued, and signed by the commissioner or his authorized agent. It shall give the name and address of the person to whom it is issued and shall designate and limit the acts that are permitted and the time when and place where such acts may be performed." The argument is that the words "designate and limit * * * the time when * * * such acts shall be performed" necessarily require the commissioner to limit all permits by the calendar, and forbid his granting them as here until they are revoked.

The point is not a good one, even though we went too far in saying that no part of the first two paragraphs of section 6 touched anything but "liquor." The language does not mean that the permit must expire by the calendar, but only that it must "designate and limit" its own duration; its temporal, like its spatial, limitations must be stated. This was doubtless in order that there should be no controversy over the period within which the acts allowed should be lawful. An uncertain event is as effective a limit as a certain. It is apparent that, when Congress meant to circumscribe the commissioner's powers by fixing a duration measured by months or days, it did so expressly. Thus permits to manufacture, prescribe, sell, or transport liquor were not to last beyond December 31st of the succeeding year; a permit to buy it, not more than 30 or 90 days, as the case might be. There were no such periods set for other permits, and there is no reason to suppose that more was intended than that the term of their validity should be declared, however measured. To say that they should last until surrendered or revoked accomplished all that the law demanded. Therefore we adhere to our ruling in Higgins v. Foster, that permits to manufacture the substances defined in section 4 (27 USCA § 13) need not expire on a day named.

■ The defendants argue, however, that the permits at bar were only to last "unless revoked * * * as provided by law or regulations," and that they might "be revoked * * * in the manner and for the causes set forth in Regulation 60 * * * or" as "otherwise provided by law." This language did not, however, reserve power to revoke them contrary to section 9, or at the pleasure of the commissioner, assuming that that would have been lawful. If that had been intended, more should have been said; the reservation meant only that the permit was subject to termination by existing law, and that never took place.

■■ This disposes of all the cases except those of Daub and the Lion Company. As to Daub, his permit was limited to December 31, 1924, and was never renewed. The circular letter of September 1, 1926, which attempted to extend all such permits as those now at bar, did not profess to extend any which had theretofore expired; the language used was, "will continue to be in operation until surrendered," or revoked or until the bond fails. This did not revive a permit already expired. However, it did affect to continue those then in existence, and the Lion Company's permit by its terms expired on December 31, 1926. If the extension was valid, it put that permit into the same class as those of the other plaintiffs.

The first proviso of the second paragraph of section 6 provides "that the commissioner may without formal application or new bond extend any permit granted under this act or laws now in force after August 31st in any year to December 31st of the succeeding year." If this applies to a permit to make the substances defined in section 4, the circular letter of September 1, 1926, was valid to extend the Lion Company's permit to December 31, 1927, but no further. Obviously we cannot so hold without saying that this part at least of the second paragraph of section 6 applies to more than "liquor." We think that it does, and that our dictum went too far; the words, "any permit granted under this act or laws now in force," are too specific to be limited by what went immediately before. Hence we hold that the extension effected by the circular letter of September 1, 1926, was limited to December 31, 1927, in all cases where the permit itself was limited by a day certain. This does not affect permits which contained no such limit, for these needed no extension. It follows that the judge was right in holding that the suit as to both Daub and the Lion Company was without equity.

■ The bill is not multifarious. Any parties whose rights are violated by a single act of the defendant, as here, may in a proper case unite in one bill for their redress. International Organization v. Red Jacket Coal Co., 18 F. (2d) 839, 846, 847, 848 (C. C. A. 5). The twenty-sixth equity rule has made the whole question merely one of convenience in the administration of justice. There can surely be no more reasonable instance for al-

lowing several plaintiffs to join than when all are situated as those at bar.

It is a curious argument to say that the bills are premature. The local administrator had already sent out notices that the plaintiffs must file applications for new permits. Certainly that was an unequivocal enough declaration of his purpose, even if section 218 of Regulation 2 were not alone enough. The suggestion that the plaintiffs forfeited their rights by preparing against the chance of defeat in their main position, we should not have thought it necessary to answer, except for Cyuan v. Blair (D. C.) 16 F.(2d) 279, 281. Just what else the plaintiffs were to do in such a predicament we do not see. If they were wrong in thinking that they needed no permits, the time would have expired to get new ones before they could learn. To say that they agreed to "waive" their rights because they put this anchor to windward seems to us to aggravate their injury.

We agree that the defendant Blair was not a proper party, and the bill as to him will be dismissed; otherwise, the decree is affirmed.