## TRIBOROUGH CHEMICAL CORPORATION v. DORAN, Prohibition Com'r, et al.

No. 4464.

District Court, E. D. New York.

Feb. 27, 1930.

See also 36 F.(2d) 496.

Alfred D. Van Buren, of New York City, for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty. of Brooklyn, N. Y., of counsel), for defendants.

INCH, District Judge.

This is a suit to review the action of the Prohibition Administrator in disapproving certain withdrawal permits applied for by plaintiff.

Plaintiff's corporation has been operating since July, 1923. At that time it held a basic permit covering premises at 69 Guernsey street, Brooklyn. In 1927 plaintiff moved its plant to 195 Plymouth street, Brooklyn, and purchased or took over the plant of the Brooklyn Alcohol Corporation located at these premises.

The basic permit of the Brooklyn Alcohol Corporation had been previously duly revoked, and its president, one Pompan, had apparently been quite active in matters causing this revocation.

The arrangements by which this transfer was effected will be referred to more in detail later on.

A new basic permit was thereupon applied for and issued in 1927 to plaintiff covering this new location, and so far as the fact of this new transfer and the issuance of this new basic permit is concerned, the Administrator seems at the time of its issue to have expressed no objection.

This basic permit of plaintiff is still in existence.

There has been an effort to terminate this permit by the Administrator causing subsequent litigation, which it is unnecessary here to go into, but, at the present time, it stands unrevoked.

Plaintiff permittee has applied for certain withdrawal permits to purchase or procure alcohol for denaturation under its basic permit. These applications have been disapproved by the Administrator. It is the disapproval of these withdrawals or purchase permits of which plaintiff here complains.

Two questions are presented by this suit: First, has the Administrator power to refuse a withdrawal permit where a basic permit exists? Second, if such power exists, what is its nature and to what extent can it be exercised?

There is no dispute that the Administrator, while a basic permit exists, by reason of the regulations, which have the force of law, Maryland Casualty Co. v. U. S., 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297, has express power to limit the quantity to be withdrawn. Regulations 3, articles 95 and 96.

These withdrawal permits have been the subject of certain forms of control by the Administrator, in this circuit, since Higgins v. Foster (C. C. A.) 12 F.(2d) 647. Also see Higgins v. Mills (C. C. A.) 22 F.(2d) 913.

The question of curtailment under withdrawal permits has also been the subject of many decisions in this circuit, among which are Lion Laboratories v. Campbell (C. C. A.) 34 F.(2d) 642; Driscoll v. Campbell (C. C. A.) 33 F.(2d) 281; Liscio v. Campbell (C. C. A.) 34 F.(2d) 646; Blackman v. Mellon (D. C.) 5 F.(2d) 987; Olivett Co. v. Bowers (D. C.) 14 F.(2d) 318; W. H. Long & Co. v. Campbell (C. C. A.) 34 F.(2d) 645.

To be sure, some of these cases related to applications for a preliminary injunction. The facts in some also differ from the facts here, although the case of W. H. Long Co. v. Campbell (D. C.) 36 F.(2d) 496 (opinion of Judge Coleman), would seem to be similar to the question here presented.

However this may be, it has been already held by this court that, "even if the basic permit is still in existence, it does not carry with it the right to procure any alcohol for denaturation, and the Prohibition Administrator is vested by law with the same discretion in passing upon applications for purchase permits as is vested in him with respect to any other kind of permit." Triborough Chemical Corp. v. Doran et al. (D. C.) 36 F.(2d) 496, 497 (decision of Judge Campbell). This decision was on a motion made by plaintiff for a preliminary injunction in this very suit by which substantially the same relief was sought as is now sought on this trial. The motion was denied, and the decision con-

stitutes the law of this case and should be and is followed by me. Commercial Union v. Anglo-American Bank (C. C. A.) 10 F.(2d) 937.

In fact, this decision of Judge Campbell is quite persuasive on the issue now presented.

Assuming, however, that this record does differ substantially from that presented to the District Court on said motion, we have the law that an Administrator has the same discretion in regard to these withdrawal or purchase permits as in cases of basic permits.

Plaintiff contends that the Administrator "should not be allowed to refuse withdrawal permits because of matters incorporated in the basic permit." Or, as it is put elsewhere in the argument, "the Administrator should not be allowed to revoke a basic permit by refusing withdrawal permits thereunder." That something must have happened subsequent to the issuance of the basic permit to justify refusal of withdrawal permits.

As the Administrator has the right to refuse a withdrawal permit instead of merely cutting down the quantity thereunder, the government contends that the action of the Administrator is simply confined to evidence on which he acted in refusing the withdrawal permit, and, if this appears sufficient, in accordance with the decisions of the courts, the court will not interfere.

As the Administrator's discretion is the same in regard to withdrawal permits as in basic permits, the right of a court of equity to interfere would seem to be limited in the same way; that is, to inquire if the action of the Administrator or Commissioner is based upon an error of law, is wholly unsupported by the evidence, or is clearly arbitrary or capricious. Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; Remick Products Co. v. Mills (C. C. A.) 22 F.(2d) 477.

It may well be asked: Why has this discretion been given and for what purpose should it be exercised?

While Congress, by the National Prohibition Act (27 USCA), expressly had in mind the facilitating of "an ample supply" of alcohol and the "promotion of its use" in "lawful" and law-abiding "industries," it was scarcely contemplated that a large unlawful trade would arise in the shape of diversion of alcohol from lawful to unlawful business, to such an extent as to seriously obstruct or defeat the other important purpose of the act, to wit, the suppression of the sale of alcohol for beverage purposes.

That it was contemplated to some extent, however, is shown by the discretionary power given the Commissioner and his Administrator as to the right of revocation and curtailment of supply.

The Administrator and Commissioner therefore is placed in a most responsible position. By arbitrary and capricious action, he may seriously harm, if indeed he may not destroy, a lawful business. On the other hand, he can by carelessness or timidity, in effect, nullify the efforts to prevent the sale of beverage alcohol.

The duty therefore of such an officer is to endeavor to promote the lawful industry while protecting the government from those who would violate the law.

It is a position calling for the highest integrity and capacity.

A great quantity of regulations have come into existence to accomplish this. Sometimes it might appear that there are too many regulations and not enough confidence in the integrity and capacity of Commissioner and Administrator charged with this important duty. These innumerable regulations furnish a fertile field for litigation and dispute; yet, after all, it would seem to be the simple and plain purpose, which I have already mentioned, that can safely guide the action of this Administrator and Commissioner in most cases.

It is not therefore to be wondered at that, in times of pressure and zeal, and with the opportunity furnished by the many regulations, occasionally cases come before the court which would seem to be plainly arbitrary and capricious and sometimes without any evidence to support them—a result most disturbing to lawful business.

The plaintiff asserts that this is such a case.

I cannot agree with it.

There is nothing here to show that the Administrator has acted contrary to the law, for I believe he had the discretion in a proper case to temporarily stop all withdrawals in order to prevent the law being broken. Olivett Co. v. Bowers (D. C.) 14 F.(2d) 318 (rehearing).

It has been elsewhere stated that because a Commissioner was willing to leave unchallenged a withdrawal permit for 100 gallons this did not demonstrate that the permittee was worthy of confidence for whatever

amount he might ask. Driscoll v. Campbell (C. C. A.) 33 F.(2d) 281.

■ If the Commissioner had some competent evidence before him that any amount of alcohol he allowed under a withdrawal permit might be unlawfully diverted, I cannot agree with the contention of plaintiff that simply because the basic permit still exists he must let some alcohol be diverted. On the contrary, it would seem to be his duty to prevent such diversion, however small or in whatever form it was presented.

The plaintiff would seem to claim, however, that under such conditions the sole right of the Commissioner and Administrator was to proceed against the basic permit.

In most cases I believe this would be the proper procedure. If circumstances indicated to the Commissioner bad faith on the part of permittee sufficient to prevent withdrawals, they would seem to furnish cause for the issuance of a citation for revocation of the basic permit. If the use to which the alcohol was likely to be put showed bad faith, the basic right to use same would seem to be so intimately connected with such use as to justify steps to revoke.

Not explained in a satisfactory manner, the disapproval, in their entirety, of withdrawal permits and a failure to proceed against the basic permit might well be some evidence of arbitrary and capricious action and an attempt to revoke a basic permit in a manner contrary to law.

It may well be that, sufficient time having elapsed for permittee to act, the Commissioner should proceed here to revoke the basic permit.

■ But I cannot agree that under all circumstances must the Commissioner proceed to revoke the basic permit if he would temporarily withhold approval of a withdrawal permit.

Circumstances may exist showing that such action was far from being arbitrary or capricious and, on the contrary, was quite fair to a basic permittee.

■ Aside from the fact that in this case the Commissioner has taken certain steps in regard to the basic permit of plaintiff, which so far has been unsuccessful, and assuming, as appears to be the fact, that said basic permit is at present good and valid, this case would appear to be one where the failure to proceed to revoke the basic permit should not prevent the proper exercise of discretion on the part of the Administrator in temporarily withholding approval of withdrawal permits.

■ Here the permittee's plant and equipment appear adequate and may justify a basic permit. Yet said permittee's conduct in permitting a well-known violator of the law to continue to remain interested in its business, or to be employed by it, or act in any capacity for it, is sufficient to raise a reasonable inference of fact that such permittee, while this is allowed to go on, is not worthy of confidence and that no alcohol should be actually used by such permittee until it clearly and satisfactorily removes these indications that such alcohol might be diverted.

Applying the above reasoning to the record before the Administrator, it appears that the business of this permittee has been in effect merged with that of the Brooklyn Alcohol Company, which was owned and operated by a former permittee whose permit had been properly revoked. That after such revocation this business had been bought by plaintiff from such persons for "one dollar and good promises," although the plant so purchased was worth nearly $100,000. That these "good promises" apparently included the employment of this very individual, whose previous diversions had caused a revocation of the basic permit of his corporation and who had been shown unworthy of the confidence of the Commissioner, at a "salary" of $5,000 a year, as long as the present permittee "used the apparatus for manufacturing purposes."

There would have seemed no reason in this matter to have employed subterfuge if none had been intended. On the other hand, a "salary" implies "services." There is evidence of such services by this person as late as July, 1929.

The whole situation indicates, from facts shown to have been before the Administrator, a reasonable inference that this individual is still interested in and connected with the business of plaintiff.

Accordingly, the Administrator disapproved its application for withdrawals, stating as follows:

"September 27, 1929.

"This application is disapproved for the reason that the personnel of your company is not regarded as worthy of continued confidence.

"David Pompan formerly of the Brooklyn Alcohol Corporation whose permit was revoked for serious and flagrant violations of

the National Prohibition Act is connected with your corporation in a responsible capacity and under circumstances indicating that the said Brooklyn Alcohol Corporation through David Pompan is financially interested in your company and is therefore profiting by its operation.

"Very truly yours,

[Signed]   Maurice Campbell,

"Prohibition Administrator."

Thereupon plaintiff replied by letter to this statement of the Administrator, in substance quoting what had been said by him, and stating "without conceding or admitting the above statements you are hereby notified and advised that the said David Pompan is not employed by this company in any capacity nor is he directly or indirectly financially interested in this company or profiting by its operations," together with a denial that the Brooklyn Alcohol Corporation was likewise interested.

Accompanying this letter of plaintiff was a letter from said Pompan, dated October 1st, in which he also states that "he is not so employed or financially interested," etc.

The Administrator replied to these letters acknowledging the receipt of them and referred to the testimony of a Mr. Allen of permittee's concern taken at the hearing on the application, and again stated the reason existing for his reasonably believing that there existed some such connection between Pompan, the Brooklyn Alcohol Corporation, and plaintiff.

It is unnecessary to base this action of the Administrator on other facts than these mentioned or to refer to evidence in this case beyond that of this alleged connection. Suffice it to say that there appears some competent evidence before the Administrator which justifies his conviction that permittee, while these conditions are allowed to exist, is unworthy of confidence.

▌ I do not think that so far as this court goes, the Administrator was bound to believe Pompan or permittee. Plaintiff, in its brief, asserts that the proof does not show Pompan's connection "in any responsible capacity or position." In my opinion the Administrator had the right and duty to insist that there be no connection whatever either with Pompan or his company.

Accordingly, the action of the Administrator was lawful and there was some competent evidence before him on which he acted.

▌ Plaintiff nevertheless contends with some force that in spite of the above, the Administrator's action was arbitrary and capricious and constituted fictitious interference with the basic permit, because the Administrator failed to promptly revoke its basic permit on the ground of the transfer of property from the Brooklyn Alcohol Company to permittee and the then employment and connections of Pompan, as they were fully known or should have been known to the Administrator when such basic permit was granted to permittee.

Under different facts such delay or postponement might well make subsequent and dilatory action appear arbitrary and capricious. In fact, I would say that here if the Administrator had been fully aware in 1927, at the time he granted a basic permit, of all facts on which he now relies to disapprove withdrawal permits, such disapproval would be arbitrary and capricious. But this is not what the record before the Administrator shows, and as I have already said, I am confining myself solely to this part of the record relating to Pompan's connection with permittee.

There appears some evidence that Pompan still continues to be interested in some way, and some of this evidence is quite recent.

Therefore I can see nothing arbitrary or capricious about this Administrator, after taking certain steps in regard to the basic permit and allowing perhaps more than a reasonable time to elapse in which permittee might arrange its affairs to the satisfaction of the Administrator, coming to the conclusion on such recent and competent evidence such as the record before him indicates to temporarily hold in abeyance all withdrawals by this permittee under its basic permit until the Administrator becomes satisfied that there is no further danger of diversion from such withdrawal.

There has been no adjudication that Pompan's connection and that of his company with plaintiff is insufficient to cause reasonable fear of diversion, nor can I find under the particular circumstances here that the failure to proceed to revoke the basic permit has been so unreasonable up to the present time as to make the action of the Administrator arbitrary or capricious.

Although I do not pass upon the question which might be raised in this regard, should such action to revoke the basic permit be delayed for what would appear to be an unreasonable time in this matter.

The further ground is urged that under a mistaken idea of the orders of this court

some previous withdrawals had been granted "pursuant to the order of the Court." This was disposed of by Judge Campbell and is disposed of the same way by me. There is nothing in this contention.

In my opinion therefore the present action of the Administrator can be held neither arbitrary nor capricious.

Certainly it is not for this court, already burdened with these criticisms of Administrators, to go into the ultimate stock-holding of business concerns and questions of employment or details of such service. These surely are matters for the Department.

As long as the Commissioner and Administrator acts in accordance with the law and is neither arbitrary nor capricious and has some competent evidence before him on which to hold that a permittee is unworthy of confidence, which is another way of saying, that there appears to be real danger of the diversion of the alcohol from lawful to unlawful business, the court will not interfere.

This case seems to me to be a border-line case. For this reason I have taken pains to set forth my reasons at length.

Zeal to enforce the law against the sale of beverage alcohol should not be allowed by the Administrator or the Commissioner to warp his discretion or bias his action in the important matter of permits for a useful and necessary business. On the other hand, he should not weakly yield to the demands and strategy of those who, behind an apparently useful and necessary business, appear to him, by some competent evidence, in fact, or by fair inference therefrom, to be seeking alcohol for the speakeasy and the bootlegger.

Complaint dismissed.