**TRIBOROUGH CHEMICAL CORPORATION v. DORAN, Prohibition Com'r, et al.**

No. 4973.

District Court, E. D. New York.

Nov. 10, 1930.

See, also, 36 F.(2d) 496; 39 F.(2d) 479.

Van Buren & Hilldale, of New York City (Alfred D. Van Buren, of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Geo. H. Bragdon, Asst. U. S. Attys., both of Brooklyn, N. Y., and John E. O'Neill, Legal Adviser, Treasury Department, of New York City, of counsel), for defendants.

BYERS, District Judge.

By bill in equity verified May 8, 1930, the plaintiff seeks to review the action of the then Prohibition Administrator for this district in refusing a permit for the withdrawal of 30,400 proof gallons of alcohol for denaturation. The refusal is contained in a let-

ter addressed to the plaintiff by the said administrator on April 17, 1930, reading as follows:

"Treasury Department
"U. S. Prohibition Service
"New York, N. Y.
"641 Washington St.
"April 17, 1930

"Pro–A
"Mc–tb
"Triborough Chemical Corporation,
"195–197 Plymouth St.,
"Brooklyn, New York.
"Gentlemen:

"Please be advised that your applications dated February 28, 1930 for 30,400 proof gallons of alcohol for denaturation have been disapproved after a careful review of the testimony adduced at a hearing held before me on March 24, 1930.

"The disapproval of your applications is predicated upon the fact that prior to December 31, 1927 you employed in a responsible capacity one David S. Pompan, formerly of the Brooklyn Alcohol Corporation whose permit to denature alcohol had been revoked for flagrant violation of the National Prohibition Act; and at the same time took over the equipment of the said Brooklyn Alcohol Corporation valued at over $40,000 for the nominal sum of one dollar and under circumstances indicating that the Brooklyn Alcohol Corporation through David S. Pompan was financially interested in your company and profiting by its operations; and you did thereafter in a hearing before the Prohibition Administrator held December 31, 1927 conceal from the Prohibition Administrator and other responsible officials the fact that David S. Pompan was in your employ, and you did fail to reveal the nature of the transactions through which you acquired the so-called Brooklyn Alcohol Corporation plant; and you did subsequent to January 1, 1929 in bad faith retain David S. Pompan in your employment in a responsible capacity notwithstanding the fact that you had received notice in writing that his connection with your company was looked upon with disfavor.

"The disapproval of your applications is further predicated upon the fact that the evidence offered by you does not indicate that you have any legitimate business needs or requirements for the alcohol for which you have applied.

"Very truly yours,
"Maurice Campbell
"Prohibition Administrator."

The application was filed February 28, 1930, the day following the decision adverse to the plaintiff, by Judge Inch of this court, of a prior action of the same kind, based upon a refusal of a like application dated September 27, 1929.

That decision is reported under the title Triborough Chemical Corporation v. Doran et al. (D. C.) 39 F.(2d) 479.

Judge Inch's opinion contains a complete history of the permittee's activities up to that time, and it is unnecessary, therefore, to rehearse those matters herein.

The application here involved was made the subject of a hearing before the administrator on March 24 and 25, 1930, and, under date of April 8, 1930, the then administrator made his written findings of facts resulting from the said hearing. Those findings and the testimony have been examined with care by reason of the antecedent history of this permittee.

The testimony shows that both the president of the permittee and David Pompan, the individual whose connection with the permittee is referred to in the letter of April 17th, above quoted, testified that Pompan's hiring by the permittee terminated on or about October 1, 1929.

The severance of Pompan's connection with the permittee was not established by testimony in connection with the refusal passed upon by Judge Inch, although the fact was stated in correspondence passing between the permittee and the administrator subsequent to the refusal of September 27, 1929, and in this informal way was before the court.

The administrator apparently does not accept the statement of either Allen or Pompan on that subject, for his findings, on page 7, contain the following:

"Under the circumstances the firing of Pompan appears to me to be theoretical rather than actual."

In this connection, it is necessary to allude to the circumstances attending the acquisition by this permittee of the plant used and operated by the Brooklyn Alcohol Corporation, formerly occupying the premises now under lease to the permittee; that occurred in May, 1927, and concededly was the result of the cancellation of the Brooklyn Alcohol Corporation's permit to manufacture denatured alcohol, caused by a violation of the Prohibition Law committed by that corporation.

The plant was adequate and in all respects in accordance with the law, and had a value which has been variously stated, between $40,000 and $75,000.

The bill of sale of that plant by the Brooklyn Alcohol Corporation to this permittee recited a consideration of "the sum of One ($1.00) Dollar, lawful money of the United States and other consideration, to it paid," etc.

It is familiar history in this case that the permittee did not pay any cash consideration for the plant, but agreed, through Mr. Allen, to employ Pompan in the permittee's business at a salary of $5,000 a year, so long as the permittee used that plant. It is obvious that the market value of a dismantled plant would be but a fraction of the cost to buy and instal it.

It should be observed that there was no particular reason why the Brooklyn Alcohol Corporation should not seek to make a sale of its equipment when it was forced out of business; the property was lawfully owned and could be lawfully sold, which means that a consideration could be paid for it.

For some reason which does not appear from the testimony and which is not discussed in the plaintiff's brief, such a simple and direct transaction was not attempted. It is probable that, if the sale price of the plant had been payable in instalments of $5,000 a year for a definite time, the administrator would not have felt that there was anything in the transaction which called for criticism; but he apparently suspects, and perhaps with reason, that the transfer of the plant for one dollar, plus a gentleman's agreement that Pompan should be employed at a fixed $5,000 annual salary for an indefinite time, resulted in the latter's acquisition of a continuing financial interest in the Triborough Chemical Corporation; in other words, that this permittee was merely a cloak to enable Pompan to continue in business under another name.

If the evidence pointed to such a conclusion, the refusal of the withdrawal permit clearly would have been justified, but there is no such evidence in the record. The testimony is that Pompan severed his connection with the permittee on October 1, 1929, and, at page 77 of the minutes of the hearing before the administrator, the following occurs:

"Q. In connection with the severance of your relations with the Triborough, is it your opinion that you had any claim against the Triborough because of your discharge from its employ? A. I have not.

"Q. Was it your opinion that the Brooklyn Alcohol Corporation has any claim because of your discharge? A. They have not.

"Q. Has any claim been presented by you or insofar as you know, has any claim been presented by the Brooklyn Alcohol Corporation? A. There is no Brooklyn Alcohol Corporation."

Under cross-examination, on page 79, Pompan testifies that he is in business for himself at 126 East Thirtieth street, "building store backs and fronts."

It is this testimony which the administrator refuses to believe, as above stated, although there is no testimony to the contrary whereby the administrator could be said to have resolved conflicting evidence in favor of the view that he has taken.

The letter disapproving the application will be seen to express the following three grounds:

(a) The employment of the said Pompan prior to December 31, 1927, under circumstances indicating that the Brooklyn Alcohol Corporation, through the said Pompan, was financially interested in the permittee, and profiting by its operations.

It has been shown that this condition terminated October 1, 1929, and there is no evidence in the record to the contrary. There is no evidence that Pompan had any financial interest whatever in the permittee, as at March 24, 1930.

(b) That the permittee, in a hearing before the Prohibition Administrator held December 31, 1927, did "conceal from the Prohibition Administrator and other responsible officials the fact that David S. Pompan was in your employ and you did fail to reveal the nature of the transactions through which you acquired the so-called Brooklyn Alcohol Corporation plant; and you did subsequent to January 1, 1929, in bad faith retain David S. Pompan in your employment in a responsible capacity," etc.

There can be no doubt that the permittee, speaking through its president, Allen, in December, 1927, did conceal from the administrator the fact that Pompan was employed and was in receipt of a salary, and that concealment is evidently relied upon by the administrator as so discrediting the permittee and its president, Allen, as to stamp the permittee as being a company unworthy of the confidence of the administrator's office.

As has been said, it is difficult to understand why in December, 1927, Mr. Allen did not frankly and fairly disclose the arrangement with Pompan, because, if the latter in fact had no continuing financial interest in the Triborough Corporation or its opera-

tions, there was nothing to be concealed concerning the sale of the plant and the consideration payable therefor.

The continued association with Pompan after the initial operations of the new company was properly calculated to arouse the suspicions of the administrator as to the good faith of the permittee's business transactions; it might even have been sufficient to cause the institution of proceedings to revoke the basic permit of the permittee, but no such proceedings have been undertaken at any time.

The evidence in this record points clearly to the severance, complete and unequivocal, on October 1, 1929, of Pompan's relations with the permittee, and the mere fact, that those relations were concealed at their inception, does not prove that from and after October 1, 1929, either Mr. Allen or the Triborough Chemical Corporation was unworthy of confidence.

(c) The third ground stated in the letter is this:

"The disapproval of your applications is further predicated upon the fact that the evidence offered by you does not indicate that you have any legitimate business needs or requirements for the alcohol for which you have applied."

That statement of the administrator quite clearly characterizes his disposition of this application. The witness Allen testified, at page 38, as follows:

"Q. At the time those withdrawal permits were disapproved by the administrator the Triborough Chemical Corporation was the holder of some 1477 permits, was it not? A. Quite a few.

"Q. And also had orders for completely denatured alcohol? A. They had. Fortunately for us the market dropped and we haven't had anybody with the exception of one concern who have held us to those orders, who have held us legally.

"Q. During this period you have been unable to procure alcohol your business has practically been at a standstill? A. Not practically, absolutely."

Thus it appears that the administrator, by refusing withdrawal, has in effect closed down the operations of the permittee company, and then has refused the latest application for withdrawal on the ground that there is no necessity for granting it.

By this simple process, the administrator has undertaken to accomplish, by indirection, what he might have been able to accomplish legally and by direction, namely, by instituting and successfully maintaining a revocation proceeding of the basic permit.

It is unnecessary to add to what has been said previously concerning the difficulty of the position of the administrator in connection with these permits, and of the duty which rests upon him at all times to protect the interests of the government, and to prevent the diversion of alcohol into illegitimate channels; but it may be doubted if either those difficulties or that duty may be said to justify the practical annulment of a basic permit through the methods here employed.

In the opinion of Judge Inch, above referred to, the following language occurs:

"Plaintiff nevertheless contends with some force that in spite of the above [the Administrator's proceedings reviewed by Judge Inch], the Administrator's action was arbitrary and capricious and constituted fictitious interference with the basic permit, because the Administrator failed to promptly revoke its basic permit on the ground of the transfer of property from the Brooklyn Alcohol Company to permittee and the then employment and connections of Pompan, as they were fully known or should have been known to the Administrator when such basic permit was granted to permittee.

"Under different facts such delay or postponement might well make subsequent and dilatory action appear arbitrary and capricious. * * * "

Sufficient time has elapsed for the administrator to take appropriate proceedings to revoke the basic permit, if he shall be so advised, and the decision herein made is without prejudice to such action, if the administrator shall take it. But, upon the record now under examination, it appears that the refusal of the withdrawal permit sought under date of February 28, 1930, is so arbitrary and capricious as to entitle the plaintiff to the relief herein sought, and an injunction will issue in accordance with the prayer of the bill.

Settle decree on three days' notice.